IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **KENT EUGENE DELAY,** | ) | |
| | ) | Case No. 18-03105 |
| Debtor, | ) | |
| | ) | Appeal from: |
| _____ | ) | Adversary Case |
| **KENT EUGENE DELAY,** | ) | No. 16-7040 |
| | ) | Bankruptcy Case |
| Appellant, | ) | No. 14-71512 |
| | ) | |
| v. | ) | Honorable Mary P. |
| | ) | Gorman, presiding |
| **RYAN BANDY,** | ) | |
| | ) | |
| Appellee. | ) | |

# OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Debtor/Appellant, Kent Eugene Delay, appeals the award of compensatory and punitive damages to Appellee Ryan Bandy. Because the Bankruptcy Court did not abuse its discretion in awarding compensatory and punitive damages to Bandy, the decision of the Bankruptcy Court is AFFIRMED.

Page **1** of **15**

# I. BACKGROUND[1]

On October 11, 2013, Bandy filed a lawsuit against Delay and Randall Stieren in Sangamon County, Illinois. R. 13.[2] Mr. Bandy's lawsuit was based on a Purchase Agreement through which Bandy purchased the interests that Delay and Stieren held in RKR Clubs, LLC (RKR Clubs). See Complaint (d/e 13-1), at 1. The Purchase Agreement provided that Delay and Stieren retained an option to reacquire their membership interests under certain conditions. See id. at 1, 6.

Delay and Stieren filed an answer to Bandy's complaint and a counterclaim against Bandy on November 7, 2013. Id. On July 17, 2014, Delay and Stieren filed a motion for summary judgment in the state court case. R. 14. Bandy responded by filing a cross-motion for summary judgment on December 19, 2014. R. 15. On March 23, 2015, the state court judge granted Delay and Stieren's

---

1 The Bankruptcy Court sets forth the facts underlying this appeal in detail in the Opinion issued on March 29, 2018. In this Opinion, the Court sets forth only those facts necessary to resolve this appeal.

2 The Bankruptcy Record on Appeal (d/e 3) contains two sets of Bates-labeled documents. In this Opinion, documents from the first set, which begins at 7 and ends at 436, are cited with the notation "R." The second set, which begins at 1 and ends at 89, are cited with the notation "B.R."

motion for summary judgment and denied Bandy's cross-motion for summary judgment. R. 16. Bandy appealed, but the Illinois Appellate Court for the Fourth District affirmed the trial court's judgment and remanded the case for further proceedings. See Order (d/e 13-30), at 12.

Delay and Stieren subsequently filed a Motion to Compel Judgment on August 19, 2016, asking the state trial court to compel the transfer of the interests in RKR Clubs to which Delay and Stieren were entitled pursuant to the repurchase option in the Purchase Agreement. R. 21-22. Delay and Stieren also sought authorization for a breach of contract claim against Bandy and for an accounting by a third-party accountant to determine damages. R. 22. Bandy filed an objection to the motion. B.R. 68-75.

However, on August 20, 2014, months before the state court judge granted Delay and Stieren's motion for summary judgment, Delay filed for bankruptcy. B.R. 1. In listing creditors holding unsecured nonpriority claims, Delay included Bandy. R. 47. However, Bandy's mailing address was listed as that of David Reid, Delay and Stieren's attorney in the state court case. Id.; R. 13. As a result, Bandy did not learn that Delay had filed bankruptcy until

after the state court judge had granted summary judgment in favor of Delay and Stieren. Transcript (d/e 4), at 67. Delay received a discharge in bankruptcy in December 2014. B.R. 2.

On August 4, 2016, after Bandy had learned of Delay's bankruptcy, Bandy's attorney sent an e-mail to the Trustee, Mariann Pogge (Trustee), offering $10,000 for Delay's interest in RKR Clubs and Delay's rights as set forth in the state court counterclaim. See Transcript (d/e 4), at 217-18; Complaint, R. 258, 268. The trustee informed Reid of Bandy's offer; Reid responded by stating that the offer was too low and tendering a $15,000 offer on behalf of Delay. See Transcript (d/e 4), at 218. On August 16, 2016, the Trustee filed a Motion to Compromise. B.R. 60-62. In the motion, the Trustee seeks authorization to compromise the bankruptcy estate's interest in Delay's state court counterclaim and any rights flowing to Delay pursuant to the counterclaim with Delay for $15,000. Id. at 60-61. The Bankruptcy Court has not yet ruled on that motion.

On September 13, 2016, Bandy initiated an adversary case by filing a complaint against Delay. B.R. 7-10. On May 9, 2017, Bandy filed a five-count Second Amended Complaint for Sanctions

for Violation of Automatic Stay.  Sec. Am. Complaint, R. 161-176. In Count I, Bandy sought sanctions against Delay for Delay's violation of the automatic stay resulting from Delay's filing of a bankruptcy petition.  Id. at 162-66.  Count II sought a declaratory judgment finding that the state court judgment was void due to the judgment being obtained in violation of the automatic stay.  Id. at 166-67.  Count III sought a declaratory judgment that the Trustee's Motion to Compromise was also void and providing guidance to the Trustee on how to sell Delay's interest in RKR Clubs.  R. 167-68. Count IV sought sanctions against Reid for Reid's violations of the automatic stay and the Illinois Rules of Professional Conduct.  R. 169-74.  Count V sought punitive damages from Reid due to Reid's willful and deliberate violation of the automatic stay.  R. 174-75.

On June 5, 2017, the Trustee filed a Motion for Leave to Intervene as to Count II of Second Amended Compliant.  R. 187-91. On that same date, the Trustee filed a Motion to Dismiss Count III of Second Amended Complaint.  R. 192-96.  On June 27, 2017, the Bankruptcy Court entered Orders granting the Trustee's motions. R. 205-06.  Bandy's remaining claims were tried to the Bankruptcy Court on December 19 and December 20 of 2017.

The Bankruptcy Court issued its Opinion on March 29, 2018. Opinion, R. 245-304. For the reasons set forth in the Opinion, the Bankruptcy Court entered judgment in favor of Bandy and against Delay on Count I. Order, R. 306. On Count II, the Bankruptcy Court entered judgment in favor of Bandy and against Delay and the Trustee, but also entered judgment in favor of Stieren and against Bandy. Id. On Counts IV and V, the Bankruptcy Court entered judgment in favor of Reid and against Bandy. Id. at 307.

As to Count I of Bandy's Second Amended Complaint, the Bankruptcy Court found that Delay had willfully violated the automatic stay under both § 362(a)(1) and § 362(a)(3). Opinion, R. 287. The Bankruptcy Court determined that Bandy's compensatory damages should include "an opportunity to purchase, for $15,000, Mr. Delay's interest in RKR Clubs, rights under the Purchase Agreement, and all claims that were raised or that could have been raised in the counterclaim filed in state court." Id. at 291. Bandy's option to make this purchase was subject to several conditions, one of which was that Bandy had to agree to subordinate his claim in the bankruptcy case to all other timely filed claims. Id.

The Bankruptcy Court also determined that Bandy was entitled to $5,000 in attorney's fees as compensatory damages. Id. at 293. Although Bandy sought a substantial amount of attorney's fees paid to his attorney in the state court case, the Bankruptcy Court decided that it could not award Bandy damages for those fees, in part because Bandy did not itemize the fees. Id. at 292-93. At trial, Bandy testified that he had paid the attorney representing him in the bankruptcy case approximately $27,000. Transcript (d/e 4), at 68-69. But because Bandy failed to itemize the fees paid to his attorney in the bankruptcy case, the Bankruptcy Court could not find the $27,000 amount reasonable given the missteps and time wasted by Bandy's attorney. Opinion, R. 293. The Bankruptcy Court determined "$5,000 would be, at a minimum, a reasonable amount to award as compensatory damages" to Bandy for bringing the adversary action. Id.

Additionally, the Bankruptcy Court found that Delay's "conduct was intentional and of the type that justified an award of punitive damages." Id. at 293-294. After noting that Delay has $15,000 on deposit with the Trustee, the Bankruptcy Court found

that an award of $10,000 in punitive damages to Bandy was appropriate. Id. at 295.

The Order entered by the Bankruptcy Court awarded to Bandy the compensatory and punitive damages that the Bankruptcy Court found warranted in its Opinion. Order, R. 306. The Bankruptcy Court also awarded Bandy $350 in costs. Id.

On April 9, 2018, Bandy filed a Motion for Reconsideration. R. 308-47. At the hearing held on the motion, the Bankruptcy Court made the following statement regarding her decision to award Bandy $5,000 in attorney's fees as compensatory damages: "I could look at the situation and say decent complaint from the get-go, discovery, taking the depositions of all the people involved, going to trial, preparing the exhibits could not have been done by anybody for less than $5,000." Transcript (d/e 6), at 11. This finding was based on the Bankruptcy Court's experience as a lawyer and judge. Id. The Bankruptcy Court also made the following statement to Bandy's attorney about whether Bandy had spent "tens of thousands" of dollars on remedying the stay violations: "Absolutely, of course he did, but I didn't hear the evidence in a way that I could do that." Transcript (d/e 6), at 10. On April 24, 2018, the

Bankruptcy Court denied the Motion for Reconsideration. Order, R. 365.

On May 8, 2018, Delay filed a Notice of Appeal. R. 367-69. The challenges on appeal are limited to those made by Delay regarding the compensatory and punitive damages awarded to Bandy by the Bankruptcy Court.[3]

## II. JURISDICTION

The Court has appellate jurisdiction over this matter. See 28 U.S.C. § 158(a)(1) (providing that district courts have jurisdiction to hear an appeal from a final judgment, order, or decree).

## III. STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's conclusions of law de novo and its factual findings for clear error. Ojeda v. Goldberg, 599 F.3d 712, 716 (7th Cir. 2010). The Court reviews the Bankruptcy Court's imposition of sanctions for abuse of discretion.

---

3 Delay's Notice of Appeal references the Bankruptcy Court's judgment in favor of Bandy on Count II of the Adversary Complaint. R. 367. In addition, Delay's opening brief purports to challenge the Bankruptcy Court's award of costs to Bandy. See Appellant Brief (d/e 11), 2, 10-11. However, Delay devotes no argument to these issues in his opening brief. Delay has therefore waived these issues on appeal. Klein v. Estate of Zvunca, 562 B.R. 739, 748 n.8 (E.D. Wis. 2016). In addition, although Bandy filed a Notice of Cross-Appeal, Bandy does not challenge on appeal any aspect of the Bankruptcy Court's March 29 Opinion, March 29 Order, or denial of the Motion for Reconsideration. Bandy has therefore waived any such challenges. Id.

Patton v. Shade, 263 B.R. 861, 864 (C.D. Ill. 2001); see also In re Radcliffe, 390 B.R. 881, 899 (N.D. Ind. 2008), aff'd, 563 F.3d 627 (7th Cir. 2009). "A bankruptcy court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." In re UAL Corp., 635 F.3d 312, 319 (7th Cir. 2011), as amended on denial of reh'g (Apr. 13, 2010) (internal quotation marks omitted). The relevant inquiry in applying the abuse of discretion standard of review is whether any reasonable person could have agreed with the bankruptcy court. In re Morris, 223 F.3d 548, 554 (7th Cir. 2000).

## IV. ANALYSIS

Subject to an exception not relevant to this case, "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "To recover actual damages for a willful violation of the stay, a debtor must show the amount of damages with reasonable certainty." In re Thompson, 426 B.R. 759, 767-68

(Bankr. N.D. Ill. 2010). "A damage award cannot be based on mere speculation, guess, or conjecture." Id.

The Bankruptcy Court did not abuse its discretion in awarding compensatory damages to Bandy. Undisputedly, Bandy failed to present to the Bankruptcy Court evidence supporting Bandy's contention that he was owed the full total of his attorney's fees from the state court case as compensatory damages for Delay's violation of the automatic stay. But clearly Bandy did incur some attorney's fees in the state court case after Delay's stay violation occurred. Had Bandy, at the time Delay filed for bankruptcy, had the option to purchase the asset that the Bankruptcy Court later gave him the option to purchase, Bandy could have purchased the asset and obviated the need to continue pursuing an action against Delay and defending a counterclaim by Delay. While the pendency of the Trustee's Motion to Compromise means that Bandy would still have an opportunity to make an offer to the Trustee even if Bandy were awarded no damages for Delay's stay violation, the stay violation prevented Bandy from having that opportunity before having to continue litigating in state court subsequent to Delay's filing for bankruptcy.

To compensate Bandy for his lost opportunity, the Bankruptcy Court gave Bandy the option to purchase, for $15,000, "Delay's interest in RKR Clubs, [Delay's] rights under the Purchase Agreement, and all [Delay's] claims that were raised or that could have been raised in the counterclaim filed in state court." Opinion, R. 291.[4] Delay complains that the value of this asset was not established by the evidence presented to the Bankruptcy Court.

However, at trial, the Bankruptcy Court heard testimony about the value of the asset Bandy now has the opportunity to purchase. In August 2016, Bandy offered $10,000 for Delay's interest in RKR Clubs and any rights flowing to Delay from the state court counterclaim. Although the Trustee, after speaking to Reid, did not accept Bandy's offer, the offer still constitutes evidence of the minimum fair market value of the asset. See In re Polis, 217 F.3d 899, 903 (7th Cir. 2000). Delay, subsequent to Bandy's offer, offered $15,000 for the asset. In response, the Trustee filed the pending Motion to Compromise. In addition, Bandy testified that

---

[4] To the extent Delay is arguing that the asset does not include "other claims for damages against Bandy for Bandy's wrongful withholding of [RKR Clubs] from [Delay] and other rights," Appellant Brief, at 15, the Court finds Delay's argument unpersuasive.

the net profit for RKR Clubs in 2017 was "a couple thousand" dollars after paying Bandy's salary for running the business. The Bankruptcy Court did not abuse its discretion in awarding Bandy the opportunity to purchase Delay's interest in RKR Clubs and Delay's rights and claims related to the Purchase Agreement.

As for the $5,000 the Bankruptcy Court awarded Bandy for attorney's fees, the Court cannot say that no reasonable person could have agreed with the Bankruptcy Court's action. The amount of attorney's fees awarded was not based on speculation, guess, or conjecture. Rather, the Bankruptcy Court, relying on its experience as a lawyer and a judge, found that no attorney could have completed the work necessary to take Bandy's case to trial to establish the stay violations by Delay and Reid for less than $5,000. Bankruptcy judges are permitted to rely on their experience in determining the attorney's fees owed a party. See In re Beair, 168 B.R. 633, 638 (Bankr. N.D. Ohio 1994).

Bandy testified at trial that he spent approximately $27,000 to the attorney representing him in the adversary action. While the Bankruptcy Court believed that Bandy had spent "tens of thousands" of dollars on remedying the stay violations by Delay and

Reid, the Bankruptcy Court determined that such an amount had not been established as damages with reasonable certainty. Having presided over the case, the Bankruptcy Court was aware of the work that went into establishing the stay violations by Delay and Reid—drafting the operative complaint, conducting written discovery, taking the depositions of the individuals involved, going to trial, and preparing the trial exhibits. The Bankruptcy Court did not abuse its discretion in awarding Bandy $5,000 in attorney's fees for the work done to bring the stay violations to the Bankruptcy Court's attention.

Lastly, the Bankruptcy Court did not abuse its discretion in awarding Bandy $10,000 in punitive damages. Delay's sole argument for reversal of the Bankruptcy Court's award of punitive damages is that Bandy's compensatory damages were not sufficiently proven at trial. See Appellant Brief, at 16-17.[5] Because the Bankruptcy Court did not abuse its discretion in awarding Bandy compensatory damages, the Court finds no basis to reverse

---

5 Delay also asserts that any damages awarded to Bandy must be offset by damages awarded to Delay in the state court case. See Appellant Brief, at 11. However, the Bankruptcy Court declared the state court judgment in favor of Delay void. Opinion, R. 296. Therefore, Delay's argument to the Court for a damages offset is premature.

the Bankruptcy Court's award of punitive damages in favor of Bandy and against Delay.

## V. CONCLUSION

For the reasons stated, the decision of the Bankruptcy Court is AFFIRMED. This case is CLOSED.

ENTER: September 23, 2019

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE